## CHIN SING v. UNITED STATES.

### (Circuit Court of Appeals, Seventh Circuit.   October 5, 1915.)

### No. 2128.

1. INTERNAL REVENUE ⬅47—MANUFACTURING SMOKING OPIUM—FAILURE TO GIVE BOND—PROSECUTIONS.

The government, on prosecution for manufacture of opium for smoking purposes without the giving of the bond required by law, Act Jan. 17, 1914, c. 10, § 1, 38 Stat. 277, requiring "the bond required by the Commissioner of Internal Revenue," must show that said Commissioner had, by regulation, required a bond, and what it called for.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 144–150; Dec. Dig. ⬅47.]

2. INTERNAL REVENUE ⬅47—MANUFACTURING SMOKING OPIUM—NONCOMPLIANCE WITH REGULATIONS—PROSECUTIONS.

The government, on prosecution for manufacturing opium for smoking purposes without doing certain things, as required by the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, by regulations made by said Commissioner under authority of law, must show the making of the regulations and what they were.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 144–150; Dec. Dig. ⬅47.]

3. INTERNAL REVENUE ⬅47—MANUFACTURING SMOKING OPIUM—FAILURE TO STAMP—PROSECUTIONS.

The government, on prosecution for manufacturing opium for smoking purposes without stamping it in such a permanent manner as to denote payment of the internal revenue tax thereon, must show existence of a stamp therefor, required by regulation of the Commissioner of Internal Revenue, with approval of the Secretary of the Treasury.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 144–150; Dec. Dig. ⬅47.]

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois; Kenesaw M. Landis, Judge.

Chin Sing was convicted of violation of the laws as to smoking opium, and brings error. Reversed, with direction for new trial.

The indictment herein consists of six counts, of which the first four are based upon the act of Congress approved January 17, 1914, entitled "An act regulating the manufacture of smoking opium within the United States and for other purposes" (38 Stat. 277, c. 10), and the last two are based upon the act of Congress approved February 9, 1909, entitled "An act to prohibit the importation and use of opium for other than medicinal purposes" (35 Stat. 614, c. 100 [U. S. Comp. St. 1913, §§ 8800, 8801]).

Inasmuch as the exact language of these acts becomes material under the errors assigned, they are set out here. The former provides:

"Section 1. That an internal revenue tax of $300 per pound shall be levied and collected upon all opium manufactured in the United States for smoking purposes; and no person shall engage in such manufacture who is not a citizen of the United States and who has not given the bond required by the Commissioner of Internal Revenue. Every person who prepares opium suitable for smoking purposes from crude gum opium, or from any preparation thereof, or from the residue of smoked or partially smoked opium, commonly known as yen shee, or from any mixture of the above, or any of

them, shall be regarded as a manufacturer of smoking opium within the meaning of this act.

"Sec. 2. That every manufacturer of such opium shall file with the collector of internal revenue of the district in which his manufactory is located such notices, inventories, and bonds, shall keep such books and render such returns of material and products, shall put up such signs and affix such number to his factory, and conduct his business under such surveillance of officers and agents as the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, may by regulation require. But the bond required of such manufacturer shall be with sureties satisfactory to the collector of internal revenue, and in a penal sum of not less than $100,000; and the sum of said bond may be increased from time to time and additional sureties required, at the discretion of the collector or under instructions of the Commissioner of Internal Revenue.

"Sec. 3. That all opium prepared for smoking manufactured in the United States shall be duly stamped in such a permanent manner as to denote the payment of the internal revenue tax thereon.

"Sec. 4. That the provisions of existing laws covering the engraving, issue, sale, accountability, effacement, cancellation, and the destruction of stamps relating to tobacco and snuff, as far as applicable, are hereby made to apply to stamps provided for by the preceding section.

"Sec. 5. That a penalty of not less than $10,000 or imprisonment for not less than five years, or both, in the discretion of the court, shall be imposed for each and every violation of the preceding sections of this act relating to opium by any person or persons; and all opium prepared for smoking purposes wherever found within the United States without the stamps required by this act shall be forfeited and destroyed.

"Sec. 6. The provisions of the act of October first, eighteen hundred and ninety (Twenty-sixth Statutes, page fifteen hundred and sixty-seven), in so far as they relate to the manufacture of smoking opium, are hereby repealed."

The two sections of the latter act read as follows, viz.:

"Section 1. That after the first day of April, nineteen hundred and nine, it shall be unlawful to import into the United States opium in any form or any preparation or derivative thereof: Provided, that opium and preparations and derivatives thereof, other than smoking opium or opium prepared for smoking, may be imported for medicinal purposes only, under regulations which the Secretary of the Treasury is hereby authorized to prescribe, and when so imported shall be subject to the duties which are now or may hereafter be imposed by law.

"Sec. 2. That if any person shall fraudulently or knowingly import or bring into the United States, or assist in so doing, any opium or any preparation or derivative thereof contrary to law, or shall receive, conceal, buy, sell, or in any manner facilitate the transportation, concealment, or sale of such opium or preparation or derivative thereof after importation, knowing the same to have been imported contrary to law, such opium or preparation or derivative thereof shall be forfeited and shall be destroyed, and the offender shall be fined in any sum not exceeding five thousand dollars nor less than fifty dollars, or by imprisonment for any time not exceeding two years, or both. Whenever, on trial for a violation of this section, the defendant is shown to have, or to have had, possession of such opium or preparation or derivative thereof, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant shall explain the possession to the satisfaction of the jury."

The first count of the indictment charged the unlawful manufacture of opium for smoking purposes and that the bond required by law had not been given. The second count charged the same offense, reciting that a bond with sureties satisfactory to the collector of internal revenue and in a penal sum of not less than $100,000 had not been given. The third count charged plaintiff in error with unlawfully being engaged in the manufacture of opium for smoking purposes, that he had failed to file with the collector of internal revenue of the district in which his manufactory was located the notices, inventories, and bonds, and had failed to keep the books and render the

returns, and to operate the business under the surveillance, required by the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury. The fourth count charged plaintiff in error with the unlawful manufacture of two pounds of opium for smoking purposes and that he failed to stamp the opium in such a permanent manner as to denote the payment of the internal revenue tax thereon. The fifth count charged that plaintiff in error imported and brought into the United States a large quantity of opium not for medicinal purposes, under regulations prescribed by the Secretary of the Treasury. The sixth count charged plaintiff in error with unlawfully receiving and concealing smoking opium which had previously been imported into the United States contrary to law.

From the record it appears that, when the officers arrested plaintiff in error, there was found upon the premises in which the arrest was made several pails of opium in different stages of manufacture, five pounds of crude opium wrapped in a leaf, certain utensils used in the manufacture, sale, and use of opium, and several smoking outfits. This was on March 3, 1914, or 46 days after the act upon which counts 1, 2, 3 and 4 are based was approved. The government chemist identified the opium so seized as crude gum opium, the aqua solution of gum opium, opium in all its various stages of manufacture, the finished product, and smoking opium. These analyses were before the jury. Plaintiff in error admitted he was the boss. He was pointed out by the man in charge as the boss. He produced the keys to the several drawers from his pocket, and otherwise held himself out as the proprietor, though he later denied that he was.

Plaintiff in error's motions at the close of the government's evidence and of all the evidence to direct a verdict were denied. He was found guilty upon all the counts of the indictment, and was sentenced to five years' imprisonment in the penitentiary at Joliet, Ill., from which judgment of the court this writ of error was taken.

The errors assigned are:

(1) The overruling of the motions to direct a verdict, both at the close of the government's case and at the conclusion of all the evidence.

(2) The evidence fails to show that plaintiff in error manufactured opium without giving bond as required, or that he manufactured opium for smoking purposes after the statute went into effect, or at all.

(3) The evidence fails to show that plaintiff in error knowingly or otherwise imported gum opium, or that he concealed such opium knowing that it was wrongfully imported, or that same had been in his possession contrary to law.

(4) There was produced no evidence to show what bond was required by the Commissioner with the approval of the Secretary of the Treasury.

(5) No evidence was produced as to the judicial and revenue districts in which the alleged crimes were committed.

(6) The court was without authority to instruct the jury as to such matters in the absence of evidence.

(7) The court admitted in evidence over objection an application and bill for gas pertaining to the premises occupied by plaintiff in error.

(8) The jury failed to specify the counts under which the jury found plaintiff in error guilty.

(9) The said acts of Congress are unconstitutional.

(10) The judgment and sentence of the court are excessive and unwarranted under the law and the evidence and the verdict.

William A. Morrow and Charles F. Hille, both of Chicago, Ill., for plaintiff in error.

Charles F. Clyne and Joseph B. Fleming, both of Chicago, Ill., for the United States.

Before BAKER, KOHLSAAT, and MACK, Circuit Judges.

KOHLSAAT, Circuit Judge (after stating the facts as above). [1] The crime charged in the first count is the manufacture of opium for

smoking purposes by appellant without giving the bond required by law for such manufacture. The statute calls for "the bond required by the Commissioner of Internal Revenue." It does not appear from the indictment or in the evidence that the Commissioner had required any such bond. At the date of the offense charged, less than 60 days had elapsed since the passage of the act under which the indictment was found. The authority of the United States to prohibit or regulate the manufacture of smoking opium within a state, when that act is not otherwise unlawful, must rest upon the right to exercise its taxing power as to matters within the states. Those coming within the operation of such powers of the government are entitled to have the duties and obligations thereby imposed made so clear and certain that they can be readily complied with, and the penalties avoided. It does not appear that this has been done in the present instance. If no such bond had been required by the Commissioner of Internal Revenue, appellant was not in default in not giving the bond set out in the indictment. The government was bound to show that the Commissioner had by regulation required a bond and what it called for. This it has not done. We are unable to see how appellant could be held for failure to comply with regulations which had never been promulgated.

The offense of count 2 is the failure of appellant to give "the bond required by law to be given by a manufacturer of opium, to wit, a bond with sureties satisfactory to the collector of internal revenue and in a penal sum of not less than $100,000." By the statute this bond must be such as the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, may by regulation require. No such regulation is either alleged or shown, and therefore, so far as the record discloses, there was no means whereby appellant could have complied with the statute.

[2] The offense charged in count 3 is the failure of appellant to file with the collector of internal revenue of his district the notices, inventories, and bonds, and his failure to keep such books and to render such returns of material and product, and to put up such signs and affix such number to his factory, and conduct his business under such surveillance of officers and agents as required by the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, by regulations made by said Commissioner of Internal Revenue under authority of law. That any such regulations had been made was neither charged nor proven. Appellant was convicted of failure to comply with regulations which, so far as is disclosed in the record, never existed. The burden was upon the government to show what these regulations were and the infraction thereof by appellant.

[3] The crime set out in the fourth count of the indictment was the failure to stamp the said opium in such a permanent manner as to denote the payment of the internal revenue tax thereon. The failure to stamp is a different offense from the failure to pay the tax. The indictment does not allege, nor does the record disclose, that there existed any stamp or that the Commissioner of Internal Revenue with the approval of the Secretary of the Treasury had by regulation required any stamp for such purpose. Appellant could not be held for

the failure to apply and cancel a stamp which never existed. If it did exist, it rested upon the government to show that fact.

The fifth and sixth counts are not supported by any proof whatever tending to show that the opium referred to in these counts was imported contrary to law. There is absolutely no evidence to otherwise sustain either of them.

While the evidence would, in our judgment, sustain the charge that before and at the time of the seizure of the plant appellant was a manufacturer of opium within the meaning of section 1 of the act of 1914, it entirely fails to establish any of the offenses charged in the indictment.

The judgment of the District Court is therefore reversed, with direction to sustain appellant's motion for a new trial.